**In re Multidistrict Private Civil Treble Damage Antitrust Litigation Involving IBM.**

**No. 18.**

Judicial Panel on Multidistrict Litigation.

July 31, 1969.

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM, WILLIAM H. BECKER, JOSEPH S. LORD, III, EDWIN A. ROBSON, STANLEY A. WEIGEL, and EDWARD WEINFELD, Judges of the Panel.

## OPINION AND ORDER

JOSEPH S. LORD, III, Judge of the Panel.

On February 3, 1969 International Business Machines Corporation (hereinafter IBM or defendant) filed a motion with the Panel for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407 of the two cases brought against it. One of these cases was filed by Control Data Corporation (hereinafter Control Data or CDC) in the District of Minnesota and has already been assigned to Judge Philip Neville. The other case was brought by Data Processing Financial and General Corporation (hereinafter Data Processing or (DPF&G) in the Southern District of New York. This case has not yet been assigned to a single judge under Rule 2 of that court.

A hearing was had on IBM's motion in New York on March 31, 1969. Thereafter, and before the promulgation of the Panel's opinion, a third action against IBM was filed in the Southern District of New York on April 22, 1969 by Applied Data Research, Inc. (hereinafter ADR), and on May 21, 1969 Programmatics Incorporated also sued IBM in the same District. Neither of these cases has been assigned to a single judge. In view of the additional actions that had been commenced, we ordered

rehearing, which was had in Denver, Colorado, on May 23, 1969.

While conceding the necessity for some type of coordination to avoid duplication in the pretrial of these cases, CDC strongly opposes transfer of its case to the Southern District of New York. Although Data Processing acknowledges substantial common questions of fact between the two cases, it takes "no position" on whether there should be a transfer for coordination or consolidation under § 1407. It urges, however, that if there is to be a transfer it should be to the Southern District of New York. While strongly supporting transfer, IBM has not specified its choice for a transferee forum. ADR and Programmatics oppose any form of transfer for consolidation or coordination.

Control Data is primarily a manufacturer of electronic data processing equipment or *hardware* and the procedures and programs necessary to utilize this complex equipment or *software*. Data Processing does not manufacture computers but its primary business is the leasing of computers and associated *software*. IBM competes with both as it not only manufactures and sells hardware and software but also has an extensive leasing program. CDC also leases its equipment. ADR and Programmatics supply *software* packages in competition with IBM's packages.

█ After two full hearings on the proposed transfers the Panel has concluded that all the cases pending in the Southern District of New York should be transferred to the District of Minnesota for consolidated or coordinated pretrial proceedings pursuant to 28 U.S. C. Section 1407.

CDC, DPF&G and IBM concede that their cases are ones "involving one or more common questions of fact * * * pending in different districts." 28 U.S.C. § 1407(a). ADR and Programmatics, however, contend that they are concerned solely with software and that any inquiry into the hardware phase of the computer industry would be not germane to their cases.[1] We cannot agree. The computer industry, it is true, has the dual facets of hardware and software. However, it is conceded that the two are inextricably intertwined, for the hardware is useless without the software and vice versa. Indeed, ADR's complaint, like those of CDC and Data Processing, alleges a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, in which it specifically charges monopolization of the hardware market. To take another example of the commonality of factual questions that will inevitably be explored, Programmatics' complaint alleges (Paragraph 12): "By means of its single-price policy covering an IBM bundle of hardware and blocks of software packages, IBM has contrived to hide the share of its revenue properly attributable to hardware as against software." Programmatics also charges a tying operation of hardware and software. Again, this complaint, like the complaints in the other cases, alleges violations of Sections 1 and 2 [2] of the Sherman Act and Section 3 of the Clayton Act. All four cases raise the question of IBM's single-price policy for the hardware and software. There is no doubt that a core question, common to all cases, is the relationship between hardware and software,—a question that will involve massive discovery, not only nationwide, but worldwide.

These cases will require the exploration in depth of wide fields of both technical and economic data. The inquiry will perforce be largely identical in all cases [3] and will entail the production of a multitude of the same documents. In the technical field, in addition to the technology itself, rulings as to trade se-

---

1. Programmatics also argued that its case should not be transferred because it was seeking preliminary relief in the Southern District of New York. That relief, however, was denied on June 6, 1969.

2. 15 U.S.C. §§ 1 and 2.

3. For example, at least the first 48 pages of both CDC's and DPF&G's interrogatories to defendant are identical.

cret problems will be required and should be coordinated. The economic data will include IBM's power and position within the industry, the ability of other manufacturers, lessors and suppliers to enter the industry and compete, identification and definition of the market, the nature of the industry, and the complex structure of the market involving manufacturers and suppliers of hardware, software and peripheral equipment, as well as leasing companies and maintenance specialists.[4] We are convinced that the full development of the evidence will involve extensive discovery, most of which will be both complex and common to all cases. It is obvious to us that these law suits have massive dimensions. We are convinced that the inevitable extent and complexity of projected discovery qualifies these cases as "exceptional" so that transfer and consolidation is required.

From the legislative history of Section 1407, it is clear that although these cases at present are relatively few in number, they represent one type of litigation that the section was designed to cover.

> "If only one question of fact is common to two or three cases pending in different districts there probably will be no order for transfer, since it is doubtful that transfer would enhance the convenience of parties and witnesses or promote judicial efficiency. *It is possible, however, that a few exceptional cases may share unusually complex questions of fact*, or that many complex cases may share a few questions of fact. In either of these instances substantial benefit may accrue to courts and litigants through consolidated or coordinated pretrial proceedings." (Senate Report 454 to accompany F159, pages 4 & 5) (Emphasis added)

4. At the hearing counsel for IBM estimated that there were approximately 80 manufacturers of computers, 60 manufacturers of peripheral equipment, hundreds of software houses and about 150 leasing companies.

■ So far as any dissimilarities exist among the cases, discovery relating to non-common questions of fact can be conducted following remand if the transferee judge concludes that such procedure would be in the best interests of justice.

■ We have before us also the case of Datastation of Los Angeles, Inc. v. IBM, et al., Central District of California, Civ. No. 68–1232–HP, which case was considered for possible transfer on the initiative of the Panel. None of the parties favor the inclusion of this case in coordinated or consolidated pretrial proceedings. IBM has already been dismissed and the case is close to being ready for trial as to the remaining defendant, which is not before us. That case will not be transferred.

■ ADR and Programmatics argue that transfer of their cases will result in serious inconvenience to the transferred plaintiffs and their witnesses. Some inconvenience to someone is inevitable when cases are transferred, but the Panel "must consider multiple litigation as a whole in the light of the law." In re Childrens' Book Cases, 297 F.Supp. 385, 386 (JPML, 1968). However, there is no need to inconvenience witnesses since depositions can and should be taken at locations convenient to those witnesses.[5] It is true that there may be some additional expenses and inconvenience to counsel for the New York plaintiffs since they will be required to travel to Minnesota to attend pretrial conferences or will have to retain local counsel for that purpose, but this expense and inconvenience will be more than offset by savings from and convenience of coordinated or consolidated pretrial proceedings directed by the transferee judge. Cf. In re Antibiotic Drug Litigation, 295 F.Supp. 1402 (JPML, 1968).

5. If requested, the Panel may appoint deposition judges to supervise depositions taken in districts other than the transferee district. 28 U.S.C. § 1407(b).

In litigation of this type where only a few cases are pending in each of two district courts the choice of a transferee forum is not an easy one. Data Processing urges the Southern District of New York for designation as the transferee forum for two reasons: (1) the government civil action has been filed in that district [6] and (2) its corporate officers and those of the common defendant are located in that district. And while it is true that the largest single concentration of documents is probably in New York, the total number of documents scattered elsewhere throughout the country greatly exceeds the number in New York, and a majority of CDC's documents are in or near St. Paul, Minnesota. While these factors are important ones, they are not here controlling. We think that the just and efficient conduct of these actions will be best furthered by their transfer to a district wherein the assigned judge is already familiar with the proceedings and will be able to insure that consolidated pretrial proceedings are conducted fairly and expeditiously. See In re Childrens' Book Cases, 297 F.Supp. 385

(JPML, 1968). Judge Philip Neville conducted his first pretrial conference in the Control Data case last December and discovery has progressed under his careful supervision since that time. He is willing to undertake the consolidated pretrial proceedings of these two cases and the Chief Judge of the district consented to the proposed assignment.

Attention has been invited to the notice of appeal [7] filed on July 17, 1969 by the plaintiffs in Programmatics, Inc. v. International Business Machines Corporation. Under the circumstances disclosed by the record in this case, delay of its transfer is not warranted.

IT IS THEREFORE ORDERED, that the treble damage actions pending in districts other than the District of Minnesota and listed in Schedule A attached hereto be, and they are hereby, transferred under Section 1407 of Title 28, United States Code, to the United States District Court for the District of Minnesota and assigned to the Honorable Philip Neville, all with the consent in writing of the transferee court attached hereto.

## SCHEDULE A

### DISTRICT OF MINNESOTA

1. Control Data Corp. v. International Business Machines Corp. — Civil Action No. 3–68–312

### SOUTHERN DISTRICT OF NEW YORK

2. Data Processing Financial & General Corp. v. International Business Machines Corp. — Civil Action No. 69 Civ. 19

3. Applied Data Research, Inc. v. International Business Machines, Corp. — Civil Action No. 69 Civ. 1682

4. Programmatics, Inc. v. International Business Machines, Corp. — Civil Action No. 69 Civ. 2185

6. This case is statutorily excluded from potential consolidation under § 1407.

7. The Notice of Appeal reads as follows: "Notice is hereby given that Programmatics, Incorporated, the plaintiff above named, hereby appeals to the Court of Appeals for the Second Circuit from that part of the order denying plaintiff's motion for a preliminary injunction, entered in this action on the 18th day of June, 1969."