### In re IBM ANTITRUST LITIGATION.

*The Telex Corp., et al.* v. *International Business Machines, Inc.,* N. D. Oklahoma, Civil Action No. 72 C 18.

**No. 18.**

Judicial Panel on Multidistrict Litigation.

April 19, 1972.

---

Before ALFRED P. MURRAH, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON*, WILLIAM H. BECKER, JOSEPH S. LORD III*, and STANLEY A. WEIGEL, Judges of the Panel.

### OPINION AND ORDER

#### PER CURIAM.

The Telex Corporation brought this suit against IBM in the Northern District of Oklahoma. The Panel issued an order to show cause why this action should not be transferred to the District of Minnesota and assigned to the Honorable Philip Neville for coordinated or consolidated pretrial proceedings with two other anti-trust actions against IBM. IBM and Greyhound Computer Corporation favor transfer; Telex and Control Data Corporation are opposed. On the basis of the papers submitted by the parties and the hearing held, we hold that transfer of the Telex action will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the litigation.

Originally five cases were consolidated with the Control Data case in the District of Minnesota for coordinated pretrial proceedings before Judge Neville.[1] Four of those cases were settled and dismissed; only the Greyhound and Control

---

* Although Judges Robson and Lord were not present at the hearing, they have, with the consent of all parties, participated in this decision.

1. *See*, In re IBM Antitrust Litigation, 302 F.Supp. 796 (J.P.M.L.1969); 314 F. Supp. 1253 (J.P.M.L.1970); 319 F. Supp. 926 (J.P.M.L.1970).

Data cases remain before the court. And we are informed that Judge Neville is considering the transfer of the Greyhound action at the conclusion of pretrial proceedings, which are near completion, to the District of Arizona for trial in May of this year.

In its complaint against IBM, Telex alleges violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and Section 3 of the Clayton Act (15 U. S.C. § 14). Telex is engaged in manufacturing and selling or leasing peripheral devices [2] to be attached to an IBM central processing unit.[3] Thus Telex affords purchasers of an IBM central processing unit the opportunity to obtain peripheral devices for attachment to their IBM central processor from someone other than IBM. Telex claims that its devices possess functional characteristics identical to the IBM peripheral devices, but utilize superior technology and provide superior performance in processing electronic data. Telex alleges that certain acts and practices of IBM violate the anti-trust laws and have deprived Telex of the opportunity to compete effectively in the market of supplying peripheral devices specifically designed for attachment to an IBM central processing unit.

IBM favors transfer of the Telex case because it feels that transfer will expedite the pretrial proceedings of the action and will assure the opportunity for an early trial. IBM argues that all parties will benefit from the coordinated discovery program relating to IBM's defense on the relevant market issues,

which it alleges is, to a great extent, the same in both the Telex and Control Data actions. Greyhound does not object to the consolidation of Telex for pretrial proceedings.

At the Panel hearing Telex supported transfer of its action for participation in the coordinated discovery program in Minnesota. It argued that, notwithstanding the fact that the relevant market alleged in its complaint is more limited than that alleged in the Control Data suit, common questions of fact are presented because the Control Data suit also involves the substitution of peripheral equipment for IBM peripheral devices. Telex claimed that the majority of the discovery it needs has already been completed in Minnesota and that with some additional discovery it can be ready for an early trial. Subsequent to the Panel hearing Telex filed an additional action against IBM in the Northern District of Oklahoma seeking a temporary restraining order and a preliminary injunction to halt and enjoin new marketing and leasing practices instituted by IBM subsequent to the filing of the first Telex action. Telex now withdraws its support and requests the Panel to deny transfer of its action to Minnesota.[4]

Control Data opposes the transfer of the Telex action to Minnesota. It strongly urges that transfer will result in the delay of its case and impede its attempt to get to trial in early 1973. It argues that the issues of its case are more complex and much broader than those in Telex and that transfer will

2. The Telex complaint defines "peripheral devices" as various items "such as tape drives, direct access disc storage units, drum storage units, printers, terminals, and memories used as accessories for the central processing unit for input, output and storage."

3. The Telex complaint defines a "central processing unit" as "(a) machine, or group of interconnected machines, possessing input, storage, computing, control, and output functions and which uses electronic circuitry . . . to perform arithmetic and/or logical operations

automatically by means of programmed instructions. When programmed, such equipment is capable of accepting information or 'input data,' processing the data according to predetermined instructions, and then providing an output of its processes in a usable form."

4. We hold that Telex's sudden change of heart does not affect our decision to transfer its case to Minnesota for coordinated or consolidated pretrial proceedings and therefore its request is denied.

force Judge Neville to adopt and supervise an independent discovery program custom tailored to fit Telex's needs. Control Data also asserts that the Telex action is analogous to the Data Research action, which the Panel earlier declined to transfer,[5] and urges that our reasoning in that decision is equally applicable to the Telex situation.

We cannot accept Control Data's assertion that our earlier decision regarding Data Research is controlling. The relevant market alleged in the Data Research case was limited to the narrow market for card punch machines and card punch verifiers. And all responding parties in that matter opposed transfer to the District of Minnesota, except IBM. We found that because of the different emphasis in the Data Research case and the actions consolidated for pretrial proceedings there was little likelihood of duplicitous discovery, and we denied transfer.

That same reasoning cannot be applied to the Telex case. The relevant market alleged by Telex involves the market for peripheral computer devices that can replace IBM peripheral equipment attached to an IBM central processing unit and is a much broader market than that alleged by Data Research. Control Data competes in the market alleged by Telex and has also alleged monopolistic practices by IBM in the peripheral device market. To this extent at least there clearly will be some degree of duplicitous discovery absent transfer. As another example of the commonality of factual questions and the potential for overlapping discovery that exists, both the Telex and Control Data actions will involve discovery of IBM's alleged monopolization of the "hardware" and "software" computer fields and the effect thereof on their respective competitive positions. *Cf.* In re IBM Antitrust Litigation, 302 F.Supp. 796 (J.P.M.L. 1969).

We find that the Telex suit shares common questions of fact with the Control Data case and that transfer will prevent inconsistent pretrial rulings and avoid overlapping discovery of complex technical economic data. Although it is true, as Control Data claims, that a denial of transfer would not necessarily preclude Telex from obtaining the discovery that has already transpired, we strongly believe that it would greatly simplify the just and efficient conduct of the litigation if the common discovery remaining were coordinated and supervised by a single judge. And transfer will enable Telex to participate in the continuing document production and in the scheduling of depositions. We are aware of the difficulties created by transfer in coordinating the discovery programs of individual litigants, but we are convinced that those difficulties are outweighed by the benefits of centralized management of pretrial proceedings. *See* In re Koratron Patent Litigation, 327 F.Supp. 559 (J.P.M.L.1971).

Both Telex and IBM have expressed a desire for an early trial. We believe that an early trial date can best be achieved, at the convenience of the parties and witnesses, by having Telex participate in a coordinated discovery program supervised by Judge Neville, who has prepared the Greyhound action for trial without substantially delaying Control Data's march toward trial. The same can be done with Telex.

It is therefore ordered that the action, Telex Corp. et al. v. International Business Machines, Inc., N.D. Oklahoma, Civil Action No. 72 C 18, be, and the same hereby is, transferred to the District of Minnesota and, with the consent of that court, assigned to the Honorable Philip Neville for coordinated or consolidated pretrial proceedings pursuant to 28 U.S. C. § 1407.

5. In re IBM Antitrust Litigation, 328 F.Supp. 509 (J.P.M.L.1971).